**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

| | | |
|---|---|---|
| **ANTONIO LUCAS, # 430-414** | * | |
| Plaintiff, | * | |
| v | * | Civil Case No.: GJH-17-1018 |
| **CO II SHAWN LOWICKI,** *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Antonio Lucas filed this civil rights action against Warden Ricky Foxwell, Lt. Stephen Elliott, and Correctional Officers Shawn Lowicki, Skylar Waters, and Richard Bankard, all employees at the Eastern Correctional Institution ("ECI"). ECF No. 5. Lucas claims that he was subject to unconstitutional conditions of confinement and excessive force. *Id.* at 3–5. Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 16. Although advised of his right to do so, ECF No. 17, Lucas has not filed a response to Defendants' dispositive Motion and the time to do so has expired. The matter is now ripe for review. The court finds a hearing in these matters unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Defendants' dispositive Motion, construed as a Motion for Summary Judgment, is granted.

**I. BACKGROUND**

**A. Plaintiff's Allegations**

In his sworn complaint,[1] Plaintiff states:

---
[1] Plaintiff's Complaint stated that it was filed under penalty of perjury, but was not signed. ECF No. 5 at 5. After being alerted to Fed. R. Civ. P. 11(a), ECF No. 21, Plaintiff submitted a signed version of the Complaint, ECF No.

> That on 01/13/2017 [he] was placed in punitive segregation based on allegations that the plaintiff was found in possession of an object considered a weapon. . . . [T]he plaintiff was physically assaulted while on handcuff by Officer Bankard, Ofc. Lowicki, and Ofc. Waters inside a mental observation strip cell because of allegations that the plaintiff refused to take order contrary to legitimate penological goals. The plaintiff sustained physical and emotional injuries including but not limited to sw[o]llen face, facial lacerations and bruises, broken jaw and extreme anxiety. Furthermore, the plaintiff was taken to the segregation housing unit medical unit for consultation and photographs of the injuries were taken.

ECF No. 5 at 3–4. Lucas has attached copies of Administrative Remedy Procedure ("ARP") requests alleging that the officers assaulted him; the requests were dismissed as repetitive to a previously filed request that Lucas did not submit to this Court. ECF No. 5-1 at 3–5.

Lucas alleges that, thereafter, he "was forced" by an unnamed person(s) to:

> sleep on the [bare] floor in a strip cell for 10 days naked without a mattress, blanket and bedsheets under extremely cold cell temperature with inadequate ventilation system and unsanitary floor with excessive dust, lint particles, mold on the wall, no toiletries and shower taken, limited food, and toxic fumes coming out of the cell vent with very strong ordor [sic].

ECF No. 5 at 4. Lucas asserts that, as a result of his confinement under these conditions, he suffered "choking sensation, labored breathing, constant cluster migraine headaches, changed [sic] in voice, mucus full of dust and lint, watery eyes and difficulties sleeping." *Id.* Lucas has attached a copy of an ARP request and ARP appeal concerning the conditions of the cell. ECF No. 5-1 at 1-3. The ARP request was dismissed as repetitive, and the appeal was dismissed with instructions to provide the Warden's response to an earlier ARP; it is unclear from Lucas' filings whether he complied. *Id.*

Lucas alleges that while he was confined under these conditions, he placed "many sick call slips but were [sic] ignored by the medical and psychology department." ECF No. 5 at 4. Lucas does not identify the individual who received his sick call slips, nor does he name any

---

22.

member of the medical or psychology department as a defendant.

## B. Defendants' Response

According to Defendants, correctional officers found a weapon on Lucas' person on January 13, 2017. ECF No. 16-13 at 11, 13. Afterward, Defendant Bankard attempted to conduct a strip search of Lucas, but claims Lucas refused to comply with orders during the strip search and swung a closed fist at Bankard. ECF No. 16-2 at 3. According to Defendants, "Officer Bankard responded to the attempted physical assault by placing plaintiff against the wall and taking him down to the floor to gain his compliance. At that point, Officer Waters handcuffed plaintiff, Officer Lowicki applied the leg irons, and Officer Bankard removed himself from the incident." *Id.* at 3–4 (internal citation omitted); ECF No. 16-6 at 7–8, 12–13; ECF No. 16-15 at 8–9; *see also* ECF Nos. 16-18, 16-19, 16-20. Defendants Bankard, Lowicki, and Waters denied punching or striking Lucas, and stated that the only force they used was that force required to restrain Lucas on the ground and handcuff him. ECF No. 16-6 at 7–8, 12–13; ECF No. 16-15 at 8–9. After Lucas was handcuffed, Defendant "Bankard removed himself from the incident." ECF No. 16-6 at 6. Defendants state that after Waters and Lowicki escorted Lucas to an interview booth, they also removed themselves from the situation. *Id.* at 12–13.

Afterward, a nurse came to evaluate Lucas, and Lucas told the nurse that he had no injuries. *Id.* at 4. After Lucas was strip searched by other officers (who are not named as Defendants), Captain Benedict ordered that Lucas be placed on Staff Alert Level 1 due to Lucas' attempt to punch Bankard. ECF No. 16-9 at 1. Inmates placed on Staff Alert Level 1 are limited to "one paper gown" instead of ordinary prison apparel, their hygiene items remain under the control of the guards, and no mattress or sheets are permitted, among other limitations. ECF No. 16-10. Over the next 12 days, Lieutenant Elliott gradually reduced Lucas' Staff Alert level

before removing him from Staff Alert. ECF No. 16-9 at 2–4.

A Use of Force ("UOF") Report was prepared regarding the January 13, 2017 incident. The UOF Report included statements from the involved officers; Lucas refused to make a statement. ECF No. 16-6 at 7–8, 12–14. The author of the UOF Report concluded that the Defendant Officers' use of force was "within the guidelines, polices, and procedures as stated in the Use of Force Manual." ECF No. 16-6 at 4.

As a result of the incident, Lucas was also charged with several inmate rule violations, including assault on staff. ECF No. 16-13 at 4–5, 7–11. At the disciplinary hearing, the hearing officer found Lucas guilty on all charges after finding that the officers' testimony was credible and that Lucas' testimony that the three officers assaulted him was not credible "based on the fact the report indicates he refused medical treatment." *Id.* at 5. Lucas appealed the hearing officer's decision to the warden, arguing that he only refused medical treatment "because the officers who assaulted me was [sic] the ones who was in the medical room with me. It was like they was [sic] trying to intimidate me." *Id.* at 16. The warden affirmed the hearing officer's decision. *Id.* at 2.

In March 2017, Lucas sent a letter to Congressman Elijah Cummings alleging that correctional officers had assaulted him on January 13, 2017, and claiming that the conditions of Staff Alert were "illegal." ECF No. 16-15 at 2, 12–15. As a result of this letter, an IID investigation was opened. The investigator reviewed medical records, disciplinary records, and institutional policies, and conducted interviews with Lucas, Bankard, Lowicki, and Waters. *Id.* at 6–9. The investigator concluded that there was no evidence to support Lucas' claim of assault and that the staff alert conditions were appropriate and the result of the fact that Lucas was caught in possession of a weapon and the fact that he attempted to punch Bankard *Id.* at 9.

4

In addition to the investigatory and disciplinary records arising from the January 13, 2017 incident, Defendants have also submitted copies of Lucas' medical records. *See* ECF No. 16-12. On January 13, 2017, a nurse conducted an initial segregation review of Lucas, noting that Lucas "offer[ed] no complaints" and "deni[ed] any acute or chronic medical concerns." *Id.* at 4. On January 17, 2017, a nurse from the institution's behavioral health section visited Lucas while he was on staff alert. The nurse advised Lucas "how to access mental [health] services via sick call process," reported no suicidal or homicidal ideations, and exhibited "unremarkable" behavior. *Id.* at 5. Lucas declined further behavioral risk assessment during the nurse's visit. *Id.* at 33. Lucas' medical records contain no additional reference to medical treatment required by or provided to Lucas during the period that he was on staff alert.

On January 26, 2017, Lucas submitted his first sick call slip complaining of back pain that he claims started on January 13, 2017.[2] *Id.* at 45. He was seen by a registered nurse the following day; she advised Lucas to purchase non-prescription pain medication through the commissary. *Id.* at 6–7. During the remainder of January 2017 and throughout February 2017, Lucas submitted four sick call slips complaining of back pain and one sick call slip complaining of a missed or canceled appointment about his back pain. *Id.* at 38–39, 42–44. During the same time period, he had three medical appointments. *Id.* at 8–10, 13–14. Following two medical appointments at the beginning of March 2017, heath care providers prescribed pain medication and ordered that x-rays be performed. *Id.* at 15–19. An x-ray was performed on March 8, 2017, and revealed "no evidence of an acute fracture, dislocation or subluxation" and "[n]o acute osseous abnormality." *Id.* at 29. As of the filing of his Amended Complaint, Lucas remained on

---

[2] Lucas' subsequent sick call slips confirm that the January 26, 2017 request was the first to complain of back pain. Lucas' sick calls dated January 29, 2017, February 4, 2017, and February 8, 2017, state, respectively, that "this is my second [sick call]," "[t]his is my 3 sick call about my back," and "[t]his is my fourth sick call about my back." ECF No. 16-12 at 42–44.

5

prescription pain medication which he reported was "effective." *Id.* at 20–22.

Other than complaints about back pain, the only sick call slips that appear in the record are two slips from April and May 2017 stating that Lucas has a cavity that he needs filled. *Id.* at 36–37. Lucas was advised that no cavity was reported during his most recent dental exams. *Id.* at 36. The record contains no sick call slips or notes in Lucas' medical record indicating that Lucas suffered any respiratory problems or migraines. *See id.* at 16–18 (notes from medical visits regarding back pain indicating ordinary respiratory function).

## II.     STANDARD OF REVIEW

Defendants' motion is styled as a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 16. If the Court considers materials outside the pleadings, as the Court does here, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*; *see also Laughlin v. Metropolitan Wash. Airports Auth*., 149 F.3d 253, 260–61 (4th Cir. 1998). Furthermore, the Court may grant a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The

party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex,* 477 U.S. at 322-23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255. Lucas was provided notice of the Defendants' filing of exhibits and affidavits to support the Motion for Summary Judgment and has not responded. ECF No. 17.

III.    **ANALYSIS**

   A.  **Excessive Force (Defendants Lowicki, Waters, and Bankard)**

A convicted inmate's claim of use of excessive physical force is examined in the context of the Eighth Amendment's prohibition against cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). The Eighth Amendment prohibits prison officials from using force unnecessarily and wantonly to inflict pain on prisoners. *Id.* at 319. When evaluating a prisoner's Eighth Amendment claim, a court must consider: (1) the objective nature of the force used and the resulting harm and (2) the subjective intent of the officers. *See Hudson v.*

7

*McMillian*, 503 U.S. 1, 8 (1992). The objective component of the inquiry is "contextual and responsive to 'contemporary standards of decency.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). However, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Id.* at 9. Thus, the crucial question is whether the force applied by the prison officials was "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6–7.

To make this determination, a court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *Whitley*, 475 U.S. at 321. The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically, liability is not avoided "merely because [the prisoner] has the good fortune to escape without serious harm." *Id.* at 38.

The allegations contained in Lucas's Amended Complaint are too vague and conclusory to meet this burden. Lucas provides a brief and non-specific description of the excessive force incident, reporting that he "was physically assaulted while on handcuff by Officer Bankard, Ofc. Lowicki, and Ofc. Waters inside a mental observation strip cell because of allegations that the plaintiff refused to take order contrary to legitimate penological goals." ECF No. 5 at 3. These allegations fail to adequately state an excessive force claim because there is insufficient detail to determine if the force was excessive under the circumstances, as measured by the *Whitley* factors. Lucas' Amended Complaint gives no indication as to whether the guards could have

reasonably perceived a threat to staff or inmate safety, whether their response was tempered, or whether the force employed was proportionately related to the perceived need. *See Whitley*, 475 U.S. at 321.

Such deficiencies in the pleading are only highlighted by Defendants' memorandum, sworn statements, and other exhibits in support of the dispositive motion. These documents—which are unchallenged by Lucas—report that the officers' use of force was merely responsive to Lucas' attempt to punch Bankard and was limited to that force necessary to restrain Lucas. Accordingly, Defendants are entitled to summary judgment on this claim.

**B. Conditions of Confinement**

Next, Lucas challenges his cell conditions during the ten days that he was on staff alert following his confrontation with the correctional officers. ECF No. 5 at 4. Lucas does not identify who placed him in these conditions or otherwise clarify the intended defendant as to this claim. However, considering Lucas' *pro se* status, the Court will liberally construe this claim as being brought against Defendant Elliott because the Defendants' exhibits reveal that Elliott had direct knowledge of Lucas' placement on staff alert. *See* ECF No. 16-9 (letters to and from Elliott regarding Lucas' staff alert status).

Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment, in violation of the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). But conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society" and not necessarily a violation of the Eighth Amendment. *Id.* "In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that the deprivation of a basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted

9

with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal quotation marks and brackets omitted) (emphasis in original). Thus, in an Eighth Amendment claim based on prison conditions, a prisoner must prove that prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Specifically, prison officials have to consciously disregard a substantial risk of serious harm to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 32 (1993). Moreover, "on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

The Court concludes that Lucas has failed to demonstrate that the conditions he experienced were objectively serious enough to amount to a constitutional violation. As previously noted, the conditions that Lucas challenges involved him having to:

> sleep on the [bare] floor in a strip cell for 10 days naked without a mattress, blanket and bedsheets under extremely cold cell temperature with inadequate ventilation system and unsanitary floor with excessive dust, lint particles, mold on the wall, no toiletries and shower taken, limited food, and toxic fumes coming out of the cell vent with very strong ordor [sic].

ECF No. 5 at 4.

The conditions Lucas complains of are similar to those at issue in *Seltzer–Bey v. Delo*, 66 F.3d 961 (8th Cir. 1995). In that case, the Eighth Circuit concluded that a prisoner's Eighth and Fourteenth Amendment Rights were not violated when he was placed in "strip cell for two days without clothing, bedding, or running water, with a concrete floor, a concrete slab for a bed, and cold air blowing on him." *Id.* at 963; *see also Williams v. Delo*, 49 F.3d 442, 444 (8th Cir. 1995) (four days without clothes, mattress, water, bedding, legal mail or hygienic supplies not a violation of Eighth Amendment). Similarly, in an unpublished opinion presenting conditions

similar to Lucas' experience, the Fourth Circuit ruled that a 10-day placement on strip-cell confinement, which included removal of prisoner's personal hygiene items, religious books, mattress, bedding, towels, and clothing, did not violate the Eighth Amendment. *Lowery v. Bennett*, 492 F. App'x 405, 407, 410 (4th Cir. Aug. 9, 2012) (unpublished). Another court noted that 18 days' confinement without a functioning toilet or mattress resulting in "stiffness, lower back pain, headaches, vomiting, constipation," and various emotional stresses did not amount to an Eighth Amendment violation. *Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. May 12, 2010) (unpublished). Likewise, the Fourth Circuit rejected a challenge under the Fourteenth Amendment brought by inmates placed in administrative segregation for six months who experienced some of the same conditions at issue in the instant case, including unsanitary cells, extreme temperatures, and limited portions of food.[3] *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997). The *Beverati* court concluded that, although burdensome, those conditions did not amount to an *atypical* burden compared with ordinary prison life. *Id.*

Accordingly, even assuming that Lucas had adequately connected his conditions of confinement claim to Elliott or any of the other Defendants, his claim fails because the conditions at issue are not so burdensome as to violate the Eighth Amendment.

### C. Deliberate Indifference to Medical Needs

Lucas alleges that he "placed many sick call slips but were [sic] ignored by the medical and psychology department." ECF No. 5 at 4. This claim appears to concern the respiratory effects and other problems that Lucas reports he experienced while on staff alert. *Id.* The claim must fail because Lucas does not name any medical personnel as Defendants, nor does he identify a prison official who received Lucas' sick call slips but failed to deliver them to an

---

[3] Although the claim in *Beverati* was presented as a due process challenge rather than one under the Eighth Amendment, if conditions are not so atypical or burdensome as to trigger due process protections, such conditions could not be so inhumane as to violate the Eighth Amendment.

appropriate medical official. Moreover, Defendants have submitted records of two encounters that Lucas had with mental health staff while on staff alert during which Lucas noted no concerns. ECF No. 16-12 at 4–5.

Additionally, to the extent that Lucas seeks to challenge his medical treatment for other conditions (namely, any apparent injuries following the January 13, 2017 incident or the back injury that he subsequently reported in late January 2017), such a claim would also fail, even if Lucas had identified a Defendant for such claims. Defendants have submitted records demonstrating that Lucas was medically evaluated immediately after the incident and that his later sick calls were promptly answered by the medical department and resulted in treatment including x-rays and pain medication. *See generally* ECF No. 16-12. Accordingly, any claim concerning Lucas medical treatment must be rejected.

### D. Supervisory Liability (Defendants Elliott and Foxwell)

To the extent that Lucas seeks to hold Foxwell liable in his supervisory capacities for any of the above claims or to hold Elliott liable in his supervisory capacity for any claims other than the conditions of confinement claim, such arguments must fail. It is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). In § 1983 actions, liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of

constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (brackets omitted).

Lucas has failed to provide such support. Indeed, other than identifying their positions at the institution, ECF No. 5 at 4, Lucas' Complaint fails to mention Defendants Elliott and Foxwell at all, much less provide assertions about the knowledge or inadequate responses of those Defendants. Accordingly, Lucas' claims against Elliott and Foxwell premised on supervisory liability must fail.

### E. State Law Claims/Supplemental Jurisdiction

In addition to his claims under the U.S. Constitution, Lucas asserts that Defendants have violated articles of the Maryland Constitution and state statutes. ECF No. 5 at 5. Having concluded that Lucas' federal law claims are without merit, the Court declines to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c) (stating that a district court "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."). Accordingly, Lucas' state law claims are dismissed without prejudice.

## IV. CONCLUSION

Defendants' dispositive Motion, construed as a Motion for Summary Judgment, shall be granted as to the federal claims, and the state claims will be dismissed without prejudice. A separate Order follows.

Date: <u>September 14, 2018</u>                  <u>/s/</u>
                                                                                   GEORGE J. HAZEL
                                                                                   United States District Judge